## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MATTHEW C. LITTON,
Appellant,

v.

DEPARTMENT OF JUSTICE,
Agency.

DOCKET NUMBERS
DC-0752-14-0791-I-1
DC-0752-14-0353-I-1

DATE: October 11, 2022

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kristin D. Alden, Esquire and Wynter P. Allen, Esquire, Washington, D.C.,
    for the appellant.

Marisa C. Ridi, Esquire and Chad Y. Tang, Esquire, Washington, D.C., for
    the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of these appeals.

### FINAL ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which reversed two indefinite

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

suspension actions, affirmed a third indefinite suspension action, and remanded to the agency for the application of certain internal procedures relating to its suspension of the appellant's security clearance. Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 ([5 C.F.R. § 1201.115](5 C.F.R. § 1201.115)). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED to (1) clarify the basis upon which the appellant's discrimination claim may be heard by the Board, (2) supplement the administrative judge's finding that the agency did not show that its disability-related inquiries were job-related and consistent with business necessity, (3) vacate the administrative judge's alternative finding that the agency failed to comply with its own procedures in suspending the appellant's security clearance, as well as her order remanding that issue to the agency for a determination as to whether the error was harmful in connection with the appellant's first indefinite suspension, and (4) vacate the administrative judge's findings regarding back pay, we AFFIRM the initial decision.

## BACKGROUND

¶2       On January 23, 2014, the appellant, a preference-eligible Special Agent with the agency's Federal Bureau of Investigation (FBI), filed a Board appeal

challenging two indefinite suspensions. *Litton v. Department of Justice*, MSPB Docket No. DC-0752-14-0353-I-1, Initial Appeal File (0353 IAF), Tab 1 at 5. The first indefinite suspension, effective upon his receipt of a September 15, 2010 letter, was based on the agency's assertion that there was reasonable cause to believe he had committed a crime for which a sentence of imprisonment may be imposed. *Id.* at 15. The agency relied upon an Office of Inspector General criminal complaint alleging that the appellant made false statements and omitted required information on a Standard Form (SF) 93, Report of Medical History. 0353 IAF, Tab 12 at 68, Tab 16 at 28, 34-37. The agency informed the appellant that the suspension would be in effect "pending the final resolution of all actions including investigation, adjudication, and any related appeals regarding this matter and/or a determination of whether or not further criminal or administrative action is warranted." *Id.*, Tab 1 at 15. The second indefinite suspension, set forth in a December 13, 2010 letter and retroactively effective November 5, 2010, after the dismissal of the criminal complaint without prejudice, was based on the suspension of the appellant's Top Secret security clearance and access to classified information. *Id.* at 7, 17. The agency informed the appellant that this suspension would be in effect "pending the final resolution of all security actions including investigation, adjudication, and any related appeals regarding your eligibility for access to classified information, and/or a determination of whether or not further administrative actions is warranted." *Id.* at 17.[2]

¶3    On appeal to the Board, the appellant asserted that the agency did not afford him an opportunity to challenge the indefinite suspensions before it took the

---

[2] On January 23, 2012, the U.S. Attorney's Office formally declined to prosecute the appellant. *Litton v. Department of Justice*, MSPB Docket No. DC-0752-14-0791-I-1, Initial Appeal File (0791 IAF), Tab 51 at 40. The agency then removed the appellant from a leave without pay status, reinstated his security clearance, and notified him that it would conduct an independent review to determine his suitability to maintain a Top Secret clearance. *Id.*, Tab 44 at 6, 62, 68; 0353 IAF, Tab 3 at 17, 24. On or about January 31, 2012, the agency restored him to a paid duty status. 0791 IAF, Tab 44 at 7.

actions, did not inform him of his appeal rights to the Board, and based the actions on disability discrimination. 0353 IAF, Tab 1 at 5, 7. He thus asserted that the actions were based on due process violations and harmful error, and that there was good cause for any delay in filing because the agency did not inform him of his right to appeal the actions and he promptly filed his appeal when he learned of those rights. *Id.*, Tab 3 at 4-5.

¶4 On June 13, 2014, the appellant filed a second appeal challenging the agency's April 17, 2014 indefinite suspension, which was based on his failure to meet an essential condition of employment, namely, the suspension of his Top Secret security clearance and access to classified information. *Litton v. Department of Justice*, MSPB Docket No. DC-0752-14-0791-I-1, Initial Appeal File (0791 IAF), Tab 1 at 8, 10. The agency informed the appellant that this suspension would be in effect "pending the final resolution of all security actions including investigation, adjudication, and any related appeals regarding your eligibility for access to classified information, and/or a determination of whether or not further administrative action is warranted." *Id.* at 10. In this appeal, the appellant asserted, among other things, that the agency did not afford him the opportunity to respond to the suspension of his security clearance, did not have the authority to indefinitely suspend him absent a denial or revocation of his clearance, and discriminated against him based on a disability. 0791 IAF, Tab 1 at 8.

¶5 The administrative judge joined the two appeals. 0353 IAF, Tab 28; 0791 IAF, Tabs 9, 12.[3] She also found that the appellant established good cause for the untimely filing of his first appeal because the agency did not provide him with notice of his right to appeal the actions to the Board, and that he timely filed his second appeal. 0353 IAF, Tab 21 at 2; 0791 IAF, Tab 52, Initial Decision

---

[3] Although the administrative judge used the term "consolidate" to indicate that the appeals would be united for consideration, the correct term in this case is "join," because two or more appeals were filed by one person. *See* 5 C.F.R. § 1201.36(a).

(ID) at 1 n.1. Based on the written record because the appellant withdrew his request for a hearing, 0791 IAF, Tab 40 at 4, the administrative judge reversed the first and second indefinite suspensions, affirmed the third indefinite suspension, and remanded the first indefinite suspension to the agency for application of its internal procedures for reviewing a decision to withdraw an employee's access to classified information, ID at 2, 8, 14-15, 26-28. The administrative judge found that the agency violated the appellant's due process rights in effecting the first and second indefinite suspensions because it did not afford him an opportunity to respond to those actions. ID at 8. In so finding, the administrative judge held that the appellant was not entitled to back pay because the agency established that his security clearance had been suspended and the maintenance of the clearance was a condition of his employment. ID at 9-14. The administrative judge further found that the first indefinite suspension must be reversed because the agency did not show that it had reasonable cause to believe the appellant had committed a crime for which a sentence of imprisonment could be imposed. ID at 21-22.

¶6     Regarding the appellant's affirmative defenses, the administrative judge held that the agency committed disability discrimination in connection with the first indefinite suspension by submitting illegal medical inquiries to him. ID at 16-20. Further, she found that the appellant did not show, with respect to the first indefinite suspension, that the agency engaged in disparate impact disability discrimination or retaliated against him for engaging in protected activities. ID at 23-25. She also found that the Board lacked jurisdiction to adjudicate the appellant's disability discrimination claims and claim of reprisal for whistleblowing in connection with the second and third indefinite suspensions because those action were based on the suspension of his security clearance, and the Board cannot review the merits of such a suspension. ID at 25-26.

## ANALYSIS

### The agency's petition for review is denied

*The appellant's discrimination claim may be raised before the Board.*

¶7 The agency asserts that, in finding that the appellant proved that the first indefinite suspension was based on disability discrimination, the administrative judge ignored an order she had issued finding that, because the appellant had previously asserted his discrimination claim in an equal employment opportunity (EEO) complaint he filed with the agency, which was found by the Equal Employment Opportunity Commission (EEOC) to be untimely filed, he could not raise the claim in this appeal. Petition for Review (PFR) File, Tab 3 at 10-12. The agency contends that a claim of reprisal discrimination was the only discrimination claim the administrative judge permitted the appellant to raise in connection with his first indefinite suspension, and she correctly found that the appellant did not prove that claim. *Id.* at 11.

¶8 The administrative judge had issued an order finding as follows:

> As noted in my prior Order, the agency is correct that there is generally no right to appeal a discrimination claim to the Board when the EEOC dismisses the claim as untimely. *See Vess v. Department of the Air Force*, 54 M.S.P.R. 578, 580 (1992) (if an agency dismisses an employee's EEO complaint as untimely, the employee has an appeal right to the Equal Employment Opportunity Commission (EEOC), but not to the Board under 5 C.F.R. § 1201.154). Thus, because the appellant previously asserted in his EEO complaint before the agency that it discriminated against him in violation of the Rehabilitation Act of 1973, he may not raise this claim in the current appeal. I find, however, that the appellant did not file an EEO reprisal claim with the agency prior to filing the instant appeal. As a result, I find that he may assert as an affirmative defense in this appeal that the agency retaliated against him in violation of the Rehabilitation Act of 1973 when it indefinitely suspended him on September 15, 2010.

0353 IAF, Tab 27. In the above-referenced order, the administrative judge set forth the following reasoning:

I further find this appeal may proceed as a mixed-case appeal as the appellant has raised an affirmative defense that the agency discriminated and retaliated against him in violation of the Rehabilitation Act of 1973 when it indefinitely suspended him. While the agency is correct that there is ordinarily no right to appeal a discrimination claim to the Board when the EEOC dismisses the claim as untimely, *see Vess v. Department of the Air Force*, 54 M.S.P.R. 578, 580 (1992) (if an agency dismisses an employee's EEO complaint as untimely, the employee has an appeal right to the Equal Employment Opportunity Commission (EEOC), but not to the Board under 5 C.F.R. § 1201.154), I find good cause to waive the untimeliness based on the facts and circumstances presented here. Because the appellant was never provided with notice of his appeal rights, he could not timely elect a remedy or pursue his Board appeal rights. *See Elbert v. Department of Veterans Affairs*, 60 M.S.P.R. 524, 527 (1994) (an agency has an affirmative duty to provide full and accurate information to an employee regarding his appeal rights. Good cause for a delayed filing exists where the agency's failure to provide the employee with the required notice of appeal rights effectively contributed to or caused the untimely filing). Thus, I find good cause to waive the untimely filing of his appeal.

0353 IAF, Tab 21.

¶9      An appellant who has been subjected to an action appealable to the Board may either file a timely formal EEO complaint with the agency regarding the action or file an appeal with the Board within 30 days of the appealable action. *Gomez-Burgos v. Department of Defense*, 79 M.S.P.R. 245, ¶ 8 (1998); 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *see* 5 U.S.C. § 7702(a)(1)-(2). An appellant cannot file both an EEO complaint with the agency and an appeal with the Board based on the same subject matter, and whichever is filed first is considered an election to proceed in that forum. *Gomez-Burgos*, 79 M.S.P.R. 245, ¶ 8. Before the appellant filed his January 23, 2014 Board appeal, he first filed, on August 20, 2012, a formal EEO complaint with the agency challenging, among other things, his September 15, 2010 placement in a leave without pay status, i.e., his first indefinite suspension. 0353 IAF, Tab 12 at 41, 46, 74. The

agency issued a final decision dismissing the complaint as untimely filed, and the EEOC affirmed that decision. 0353 IAF, Tab 12 at 41-43, 48-50, 52.

¶10 Nevertheless, in order for a complaint or appeal to be considered a valid election, the complainant or appellant must have been informed of his right to appeal to both forums and the consequences of such an election. *French v. U.S. Postal Service*, 80 M.S.P.R. 171, ¶ 6 (1998); *see McCoy v. U.S. Postal Service*, 108 M.S.P.R. 160, ¶¶ 13-14 (2008). Here, the agency did not inform the appellant when it indefinitely suspended him of his right to file an EEO complaint with the agency or an appeal with the Board, nor did it inform him of the consequences of making such an election. 0353 IAF, Tab 1 at 15. In fact, the agency's letter informed the appellant that he had no right of review or appeal of the matter. *Id.* Thus, we find that the appellant did not make a valid election to pursue his indefinite suspension by filing an EEO complaint with the agency, and that his appeal and discrimination claim may therefore be raised before the Board. As the administrative judge found, the appellant established good cause for the untimely filing of his appeal under 5 C.F.R. § 1201.22 because the agency did not provide him with notice of his Board appeal rights. ID at 1 n.1; 0353 IAF, Tabs 21, 27. There is no basis, therefore, for the agency's reliance on the administrative judge's pre-initial decision order.

¶11 Although the agency relies, in support of the above arguments, upon *Nabors v. U.S. Postal Service*, 31 M.S.P.R. 656, 659-60 (1986), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987) (Table); *Vess v. Department of the Air Force*, 54 M.S.P.R. 578, 580 (1992); *Mc Kinney v. Defense Commissary Agency*, 93 M.S.P.R. 659, ¶ 6 (2003); and *Moore v. U.S. Postal Service*, 91 M.S.P.R. 277, ¶ 6 (2002), those cases are distinguishable and do not warrant a different result. In *Nabors*, 31 M.S.P.R. at 659-70, and *Vess*, 54 M.S.P.R. at 579-80, the Board held that an untimely-filed appeal was not a timely filed mixed case under 5 C.F.R. § 1201.154 because that regulation only applied when the EEO complaint was timely filed with the agency, and the EEO complaints in those cases were not timely filed. The Board

in *McKinney*, 93 M.S.P.R. 659, ¶¶ 9-10, held that, even assuming that the appellant did not timely file her formal discrimination complaint with the agency, and that the timeliness regulations at 5 C.F.R. § 1201.154 did not apply, she timely filed her appeal under 5 C.F.R. § 1201.22. The Board in *Moore*, 91 M.S.P.R. 277, ¶¶ 9-10, remanded the appeal because it was unclear whether the appellant's EEO complaint was timely filed. None of those cases involved an agency's failure to provide an employee with notice of appeal rights. Nor do they otherwise support the agency's apparent argument that the Board may adjudicate the merits of an underlying action but not an affirmative defense when the agency or the EEOC has found that an EEO complaint involving the same action was untimely filed. In fact, the Board "shall . . . decide both the issue of discrimination and the appealable action" in the case of any employee who has been affected by an appealable action and alleges that a basis for the action was prohibited discrimination. 5 U.S.C. § 7702(a)(1)(B). Thus, the agency has not shown that the appellant was precluded from raising his discrimination claim in connection with his first indefinite suspension.

> *The administrative judge correctly found that the agency did not prove that its disability-related inquiries were job-related and consistent with business necessity.*

¶12    The agency contends that, even assuming that the Board has jurisdiction to consider the disability discrimination claim, the facts do not support that claim because the agency based the first indefinite suspension on the criminal complaint and suspension of the appellant's Top Secret security clearance, not on the answers he provided on his SF-93. PFR File, Tab 3 at 15-16. The agency also asserts that one of the cases relied upon by the administrative judge is distinguishable because it involved an applicant who was asked about medical conditions before receiving a conditional offer of employment. *Id.* at 18. The agency claims that, in any event, the questions asked on the SF-93 were job-related and consistent with business necessity. *Id.* at 18-20.

¶13 As set forth above, the agency imposed the appellant's indefinite suspension from duty and pay on September 15, 2010, "based upon the fact that there is reasonable cause to believe that you have committed a crime for which a sentence of imprisonment may be imposed." 0353 IAF, Tab 12 at 99. Although the agency also suspended his Top Secret security clearance on or about the same date, *id.* at 101, the indefinite suspension letter did not reference the suspension of the security clearance, and the Board must adjudicate the charge that was actually brought by the agency, not a different charge that could have been brought, *see, e.g.*, *Gustave-Schmidt v. Department of Labor*, 87 M.S.P.R. 667, ¶ 8 (2001). Moreover, the criminal complaint, upon which the indefinite suspension was based, asserted that there was probable cause to believe that the appellant violated 18 U.S.C. § 1001 (False Statements), and referenced his answers on an SF-93. 0353 IAF, Tab 16 at 28-29, 34-36. The administrative judge acknowledged that the indefinite suspensions were not directly based on the appellant's answers on the SF-93, yet held that the alleged crime, upon which the first indefinite suspension was based, was that the appellant failed to disclose information on his SF-93 regarding medications he was taking and treatment he was seeking relating to those medications. ID at 16-17. Thus, we find no error in her determination to address whether the first indefinite suspension was based on improper disability-related inquiries from the SF-93. ID at 18-20.

¶14 Although the administrative judge relied upon *Evans v. Department of Homeland Security*, 107 M.S.P.R. 484, ¶ 16 (2007), a case involving a preemployment disability-related inquiry, in support of her finding that the agency's postappointment inquiries constituted disability discrimination, we find the general principle set forth therein, that an agency's violation of 42 U.S.C.

§ 12112(d) and 29 C.F.R. § 1630.13(a) constitutes discrimination based on disability, applies in this postappointment case as well.[4]

¶15    Although the agency contends that it proved that its disability-related inquiries were job-related and consistent with business necessity, we disagree. The Americans with Disabilities Act (ADA) imposes significant restrictions on an employer's freedom to make medical inquiries of employees. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 29 (2014).    Under 42 U.S.C. § 12112(d)(4)(A), an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."    The EEOC's regulations implement this statute. *See* 29 C.F.R. §§ 1630.13(b), 1630.14(c).

¶16    Generally, a disability-related inquiry or medical examination may be job-related and consistent with business necessity if an employer has a reasonable belief, based on objective evidence, that (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition. *Archerda*, 121 M.S.P.R. 314, ¶ 30.    A business necessity must be based on more than mere expediency. *Hanna P. v. Coats*, 916 F.3d 327, 358 (4th Cir. 2019).    A direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. 29 C.F.R. § 1630.2(r).    The employer has the burden of showing

---

[4] As a Federal employee, the appellant's claim of disability discrimination arises under the Rehabilitation Act of 1973.    However, the standards under the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008, have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. 29 U.S.C. § 791(f); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.3 (2014).

that its disability-related inquiries are job-related and consistent with business necessity. *Archerda*, [121 M.S.P.R. 314](#), ¶ 31.

¶17    Here, the agency's inquiries were not due to any reasonable belief, based on objective evidence, that the appellant's ability to perform his essential job functions was impaired by a medical condition or that he posed a direct threat due to a medical condition. Rather, the inquiries were part of a general policy applying to all similarly situated employees. *See Conroy v. New York State Department of Correctional Services*, [333 F.3d 88](#), 97-98, 100-01 (2d Cir. 2003) (distinguishing between disability-related inquiries to all employees arising from generally applicable policies and inquiries directed at an individual employee based on particular facts relating to that employee). The EEOC's Enforcement Guidance appears to permit such generally applicable policies and inquiries under certain circumstances. For example, an employer generally may not ask all employees what prescription medications they are taking. Equal Employment Opportunity Commission, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), Notice 915.002, Question 8, 2000 WL 33407181, at *9 (July 27, 2000) (Enforcement Guidance). Nevertheless, relevant provisions of the Enforcement Guidance provide as follows:

> Asking all employees about their use of prescription medications is not job-related and consistent with business necessity. In limited circumstances, however, certain employers may be able to demonstrate that it *is* job-related and consistent with business necessity to require employees in positions affecting public safety to report when they are taking medication that may affect their ability to perform essential functions. **Under these limited circumstances, an employer must be able to demonstrate that an employee's inability or impaired ability to perform essential functions will result in a direct threat**. For example, a police department could require armed officers to report when they are taking medications that may affect their ability to use a firearm or to perform other essential functions of their job. Similarly, an airline could require its pilots to report when they are taking any medications that may

> impair their ability to fly. A fire department, however, could not require fire department employees who perform only administrative duties to report their use of medications because it is unlikely that it could show that these employees would pose a direct threat as a result of their inability or impaired ability to perform their essential job functions.

*Id.* (italics and bold in original). Similarly, the Enforcement Guidance provides that employers may require periodic medical examinations of employees in positions affecting public safety, such as police officers and firefighters, in "limited circumstances" if they are "narrowly tailored to address specific job-related concerns." Enforcement Guidance, Question 18, 2000 WL 33407181, at *14.

¶18    The relevant questions on the SF-93 asked the appellant to describe his "Present Health" and list his "Current Medication[s]," as well as to disclose whether he had consulted with or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses. 0791 IAF, Tab 44 at 51. Asking an employee whether he is taking prescription drugs or medication or questions seeking information about illnesses, mental conditions, or other impairments an employee has or had in the past triggered the ADA's, and hence the Rehabilitation Act's, protections. *Lee v. City of Columbus*, 636 F.3d 245, 254 (6th Cir. 2011); *see Miller v. Whirlpool Corp.*, 807 F. Supp. 2d 684, 685-87 (N.D. Ohio 2011). The administrative judge found that the agency put forward no evidence or argument showing how these inquiries were job-related and consistent with business necessity. ID at 20. The agency asserts on review that the duties of Special Agents include providing updates on medical health and medications, the SF-93 is a Government-wide form used as part of a fitness-for-duty examination, and it had a "business necessity in obtaining on a regular basis medical information about its Special Agents." PFR File, Tab 3 at 18-20. Nevertheless, the agency has not explained the business necessity in asking an employee like the appellant for a list of all current medications taken

and all treatment that did not involve minor illnesses. The agency has not shown that these inquiries were narrowly tailored to address specific job-related concerns, such as asking whether Special Agents were taking medications that may affect their ability to perform the essential functions of their positions. Under these circumstances, the agency has not shown that the broad inquiries at issue in this case were job-related and consistent with business necessity, and thus, has not shown error by the administrative judge. *See Roe v. Cheyenne Mountain Conference Resort*, *Inc.*, 124 F.3d 1221, 1226-27, 1230 (10th Cir. 1997) (finding that a policy requiring employees to report all drugs present within their bodies violated the ADA in the absence of a showing that the policy was job-related and consistent with business necessity); *Port Authority Police Benevolent Association*, *Inc.*, *v. Port Authority of New York & New Jersey*, 283 F. Supp. 3d 72, 84-85 (S.D.N.Y. 2017) (holding that a health questionnaire of police officers was not narrowly tailored to address specific job-related concerns when it was intended to be comprehensive and to reveal a panoply of conditions, including those having no relevance to an officer's ability to perform the job); *Stahly v. South Bend Public Transp. Corp.*, No. 3:10-CV-257-JVB, 2013 WL 55830, at *6-7 (N.D. Ind. 2013) (holding that a policy requiring the disclosure of all medications violated 42 U.S.C. § 12112(d)(4)(A) when the agency provided no evidence of business necessity and merely set forth the purpose of its policy without proving, with evidence, that the policy was necessary to achieve the purpose); *Scott v. Napolitano*, 717 F. Supp. 2d 1071, 1076, 1084-85 (S.D. Cal. 2010) (finding that the Federal Protective Service's disability-related inquiries to a Special Agent, including asking him to list all medications taken and whether he had consulted with or been treated by clinics, physicians, healers, or other practitioners for other than minor illnesses, were not narrowly tailored to assess whether he could perform the essential functions of his job).

¶19    In reaching our determination, we do not hold that a law enforcement agency cannot make inquiries regarding an employee's health. Rather, we hold

that such inquiries must comport with the requirement of 42 U.S.C. § 12112(d)(4)(A) that any disability-related inquiries be job-related and consistent with business necessity. *See* 29 C.F.R. § 1630.14(c). The agency simply did not meet its burden in this case. *See Scott*, 717 F. Supp. 2d at 1085.

*The agency's arguments regarding alternative findings by the administrative judge need not be addressed on review.*

¶20 The agency asserts that it had reasonable cause to believe that the appellant committed a crime for which a sentence of imprisonment could be imposed. PFR File, Tab 3 at 20. The agency contends that it only had to show reasonable cause to "believe," and not that the appellant could actually be convicted of the crime or whether the appropriate criminal statute was being applied. *Id.* at 21-22.

¶21 The administrative judge found, in an apparent alternative finding, that the appellant's first indefinite suspension must be reversed because the agency did not show that it had reasonable cause to believe that he had committed a crime for which a sentence of imprisonment could be imposed. ID at 21. The administrative judge noted that this issue involved whether the agency had proven, in its case in chief, that the appellant's first indefinite suspension was proper. ID at 21 n.15. Because the administrative judge correctly reversed that suspension based on a violation of due process, we need not address the agency's arguments regarding this alternative finding. *See Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 8 (2014); *Cowart v. U.S. Postal Service*, 117 M.S.P.R. 572, ¶¶ 5, 7 (2012); *Giannantonio v. U.S. Postal Service*, 111 M.S.P.R. 99, ¶ 5 (2009).

¶22 The agency also asserts that it complied with its own procedures when it suspended the appellant's Top Secret security clearance in September 2010. PFR File, Tab 3 at 23. In this regard, the agency contends that, although the administrative judge held that the agency was required to provide the appellant with a comprehensive and detailed written explanation of the basis for the suspension of his security clearance in accordance with Executive Order 12968,

the referenced section of the executive order applies to denials and revocations of security clearances, not suspension of such clearances.  *Id.* at 23-24.

¶23     The administrative judge, in what appears to be another alternative finding, held in connection with the appellant's claim of harmful error that the agency failed to comply with its own procedures in suspending the appellant's security clearance, and that a remand to the agency was necessary to determine whether the error was harmful in relation to the first indefinite suspension.  ID at 26-28. The administrative judge noted that under *Romero v. Department of Defense*, 527 F.3d 1324, 1329-30 (Fed. Cir. 2008), the Board has jurisdiction to review whether an agency complied with its own regulations and procedures in revoking a security clearance.  The statutory basis for such review is 5 U.S.C. § 7701(c)(2)(A), which provides that the Board may not sustain an action on appeal if the appellant shows harmful error in the application of the agency's procedures in arriving at its decision.  *Schnedar v. Department of the Air Force*, 119 M.S.P.R. 246, ¶ 9 (2013).  Thus, if the Board found that the agency failed to comply with such procedures, any adverse action based on the security clearance revocation would be reversed if the appellant proves that the error was harmful. ID at 27.  Nevertheless, because the administrative judge correctly reversed the September 2010 indefinite suspension on due process grounds, we need not address this alternative finding or the agency's challenges to that finding, and the administrative judge should not have made such a finding and ordered a remand in this regard.  *See Giannantonio*, 111 M.S.P.R. 99, ¶ 5.  Therefore, we modify the initial decision by vacating the finding remanding this case to the agency.

> *The administrative judge correctly found that the agency's due process violation warrants reversal of the first two indefinite suspensions.*

¶24     The agency contends that the administrative judge erred when she found that a failure to abide by the appellant's constitutional due process rights was not subject to the harmful error test.  PFR File, Tab 3 at 26 n.7.  The agency contends that any failure to provide the appellant with procedural due process requirements

in connection with the first and second indefinite suspensions was not harmful because it would not have altered the agency's decision, given that it suspended the appellant's Top Secret security clearance and he "would have been unable to present any evidence that would have reversed the suspension of his security clearance and allowed him to return to duty in any FBI position in 2010 through 2012 because it is undisputed that all FBI positions required a security clearance." PFR File, Tab 3 at 26-28. We disagree.

¶25 An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Thus, when an appealable action against a nonprobationary Federal employee has not been effected in accordance with the minimum procedures that satisfy the constitutional requirements of due process of law under *Loudermill*, the action must be reversed because it cannot withstand constitutional scrutiny. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 684 (1991). When an appealable action meets the minimum requirements of due process of law under *Loudermill*, the Board will reverse the action for harmful error under 5 U.S.C. § 7701(c)(2)(A) only when the evidence and argument of record shows that the procedural error likely caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.* at 685. Thus, administrative judges shall reverse an action for harmful error only when the appellant alleges that the agency committed procedural error, even though the procedures afforded by the agency satisfy the constitutional requirements of due process of law. *Id.*

¶26 Here, the administrative judge correctly found that the agency violated the appellant's due process rights when it did not, either before or after indefinitely suspending him in September and November 2010, provide him with an

opportunity to respond to the actions, that an agency's failure to abide by an appellant's constitutional due process was not subject to the harmful error test, and that reversal of the actions was required as a result. ID at 6, 8; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999); *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 15 n.6 (2014). The agency has shown no error in that determination.

The appellant's cross petition for review is denied

¶27        The appellant asserts that he is entitled to back pay, notwithstanding the suspension of his security clearance, because the agency cannot show that its suspension of his clearance was "legal and legally executed," given that the agency did not follow the requisite procedures for suspending the clearance. PFR File, Tab 5 at 32-35. Thus, he contends that the agency has not shown that he was unavailable for the performance of his duties for reasons other than those related to, or caused by, the unjustified or unwarranted personnel action, and that the suspension of his security clearance "was simultaneous with, and directly related to, the unjustified personnel action." *Id.* at 33-35.

¶28        After finding that the agency violated the appellant's due process rights in effecting the September and November 2010 indefinite suspensions and ordering the reversal of those actions, ID at 8, the administrative judge addressed the question of whether the appellant would be entitled to back pay under the Back Pay Act, finding that he was not entitled to such pay because the agency established that it suspended his security clearance and maintaining such a clearance was a condition of his employment, ID at 9-14; *see* 5 C.F.R. § 550.805(c)(2) (providing that, in computing back pay under the Back Pay Act, an agency may not include any period "during which an employee was unavailable for the performance of his or her duties for reasons other than those related to, or caused by, the unjustified or unwarranted personnel action"). The question of the appellant's entitlement to back pay, however, was not identified as an issue in this stage of the proceedings. 0791 IAF, Tab 43 at 4, 12.

Moreover, the parties did not address it in their closing briefs. 0791 IAF, Tabs 44, 45, 51. Under these circumstances, we find that the parties have not had a proper opportunity to address the legal and factual issues surrounding the appellant's entitlement to back pay. Thus, we vacate the initial decision's findings in that regard. If the parties disagree about the appropriateness of back pay after the issuance of this decision, the issue can be litigated as part of a compliance proceeding before the regional office. *See Hulsey v. Department of the Air Force*, 57 M.S.P.R. 473, 479 n.14 (1993); *Shelton v. Office of Personnel Management*, 34 M.S.P.R. 356, 360 (1987) (suggesting that the appellant's request for back pay at the merits stage of the case was premature and would be addressed in a compliance proceeding). As set forth in the initial decision, the appellant may file a petition for enforcement to resolve any disputed amount of back pay. ID at 28-30.[5]

¶29 The appellant also contends that the administrative judge's decision to remand the appeal to the agency to afford him access to the appropriate security clearance procedures is impractical and an empty exercise because of subsequent events, including his removal. PFR File, Tab 5 at 35-36. Instead, the appellant asserts that the agency violated his due process rights and committed harmful error, which entitled him to back pay for the reasons set forth above. *Id.* at 36. The appellant also contends that the agency's suspension of the security clearance was unauthorized because Executive Order 12968 and the agency's own regulations only reference the rescission or revocation of a security clearance, not its suspension. *Id.* at 37-40. Thus, he asserts that the indefinite suspension was not in accordance with law, and the suspension of his clearance cannot preclude

---

[5] The administrative judge noted that, even if the appellant was not entitled to back pay under the Back Pay Act, he may be entitled to back pay under the remedies that are available under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, to an appellant who proves disability discrimination. ID at 20; *see Edwards v. Department of Transportation*, 112 M.S.P.R. 82, ¶ 18 (2009); *Schultz v. U.S. Postal Service*, 89 M.S.P.R. 123, ¶ 8 n.5 (2001).

an award of back pay. *Id.* at 38-39. As set forth above, we have vacated that portion of the initial decision remanding the case to the agency. Moreover, the appellant's arguments regarding back pay are premature at this stage of the proceedings. Thus, these arguments are without merit.

¶30 The appellant also asserts that the administrative judge erred when she appeared to find in a prehearing order that he was time-barred from pursuing an affirmative defense of disability discrimination. PFR File, Tab 5 at 40, 46. As set forth above, because the appellant did not make a valid election when he first raised his claim of disability discrimination in an EEO complaint filed with the agency, he may pursue such a claim in his appeal of his first indefinite suspension. To the extent that the administrative judge ruled otherwise in an order she issued before the initial decision, we disagree with that order. In any event, because the administrative judge ultimately correctly addressed the appellant's claim of disability discrimination, any error in an earlier ruling does not warrant a different result. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

## ORDER

¶31 We ORDER the agency to cancel the first two indefinite suspensions and retroactively restore the appellant effective September 15, 2010, through January 31, 2012. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶32 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to

provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶33 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶34 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶35 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The

regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT
### REGARDING YOUR RIGHT TO REQUEST
### COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

FOR THE BOARD:                              /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.